## Shortridge *vs.* Bartlett.

### ERROR TO HENRY CIRCUIT.

1. A testator made a will in Kentucky, then removed to Missouri, where he made a second will revoking all former wills, but making no disposition of the property disposed of by the first will, which he conveyed to the devisees; and pretermitting a grand child to whom a legacy was given by the first will, and to be paid by the devisee of the land, &c., devised by the first will. Held, that the second will, though a revocation of the first, did not release the devisee of the land from the payment of the legacy to the grand child.

2. Where a party has a valid legal defense, it should be made at law; if he present it at law, and his plea is rejected upon demurrer, he may not then withdraw it and resort to a court of equity.

3. That a party demurred to a plea at law, and succeeded in excluding the defense, does not estop him in all cases from objecting to the jurisdiction of the chancellor when the same matter is there presented as ground of equity.

SHORTRIDGE
vs.
BARTLETT.

Judge CRENSHAW delivered the opinion of the court.

December 12.

On the 18th of July, 1831, Edmund Bartlett, Sr., of the county of Henry, made his will, devising his tract of land of three hundred acres, and a negro man, Gabriel, and bequeathing all his personal estate, his slaves excepted, to his son, Edmund, Jr., charged with the payment of testator's debts, and the payment of six hundred dollars to his grand-daughter, Thomas Ella. The remainder of his property, consisting of slaves, he devised to his other children. Afterwards, on the 20th of September of the same year, the testator conveyed, by deed, the same land to his said son, Edmund, Jr., and then left the state and moved to Missouri, where his daughters appear to have resided, leaving with said Edmund, Jr., said slave, Gabriel, and his personal property, or a considerable portion of it. About two years after he reached Missouri, to-wit: on the 16th of October, 1833, the testator made another will, revoking all others, which was recorded in that state. By this latter will the testator made no disposition of any of the property which he had previously devised and given to his son, Edmund, Jr., but made a different disposition of the slaves which he took with him to Missouri, from that made of them by his first will, and pretermitted his grand-daughter, Thomas Ella. The testator died in Missouri in the fall of 1833.

After his death, in February, 1835, his first will, made in Kentucky, was produced to the Henry county court, and admitted to record, and Edmund Bartlett, Jr., who had been appointed executor, was qualified, and entered into bond as such.

The grand-daughter, Thomas Ella, having intermarried with Shortridge, and Edmund Bartlett, Jr.

Case stated.

1. A testator made a will in Kentucky, then removed to Missouri, where he made a second will revoking all former wills, but making no disposition of the property disposed of by the first will, which he conveyed to the devisees; and pretermitting a grand child to whom a legacy was given by the first will, and to be paid by the devisee of the land, devised by the first will. Held, that the second will, though a revocation of the first, did not release the devisee of the land from the payment of the legacy to the grand-child.

refusing to pay them the said sum of six hundred dollars which he had been directed to pay by the first will of the testator, they instituted an action of debt on the executorial bond of Edmund Bartlett in the county of Henry to recover against him that sum. The defendant pleaded the revocation of the first will, &c., and the plaintiffs demurred, and the demurrer was sustained. The plea was then withdrawn, and judgment was rendered against the defendant for the six hundred dollars.

Edmund Bartlett, Jr., then filed the bill in this case to enjoin the collection of the judgment, upon the ground of the revocation of the first will, &c., and the extinguishment thereby of his obligation to pay the six hundred dollars, and alleging, in excuse of his failure to prosecute his defense at law, the advice of his counsel that his defense should be set up in equity.

The deed made to the son after the first will, and the leaving with him by the testator the slave Gabriel and the personal property, and the omission of the testator afterwards in his second will to make any disposition of the property given to his son, and the pretermission of the grand-daughter in the second will, manifest to our minds a clear intention and expectation of the testator that his son, Edmund, was to keep the property given to him by the first will and by the deed, charged with the payment of said sum of six hundred dollars to Thomas Ella. Notwithstanding the second will, and the undoubted revocation of the first will thereby, still, Edmund Bartlett, Jr., gets by deed, and parol gift, the same property which had been willed to him with the charge of the six hundred dollars upon it. And, having obtained the property with the intention and expectation on the part of his father, that he should, in consideration thereof, pay to his grand-daughter six hundred dollars, it is inequitable and unconscientious to refuse its payment.

It does not appear that the testator had any property in the county of Henry at the time of his death—he was then domiciled in the state of Missouri—and, independently of the revocation of the first will, the county court of Henry had no jurisdiction to grant letters of administration, and the bond executed by the executor and all the proceedings of the county court may, therefore, be wholly invalid. Yet, the ground relied upon by Edmund Bartlett to defeat the payment of the six hundred dollars, constitutes a legal defense, and he should have prosecuted it at law. When the demurrer was sustained to his plea, his remedy was by appeal or writ of error to this court. He thought proper to omit that remedy, and appeal to the chancellor, and we think the chancellor should have said to him, true, the judgment at law according to the facts was unauthorized, but you thought proper to make no defense *there*, and your prayer *here* is unconscientious, and I will turn a deaf ear to your entreaties. You do not appear to come with clean hands.

But, it is urged in argument, that, although defense was complete at law, yet the plaintiffs in that suit having objected to the defense there offered by demurring to the plea, they should not be allowed now to object to the jurisdiction and extension of relief by the chancellor. There are some cases in which it has been decided that if the plaintiff in an action of law object to the defense set up, upon the ground that it is not cognizable at law but in chancery, the plaintiff shall not object to the jurisdiction of the chancellor when appealed to at his own suggestion. Whether this doctrine be correct or not, we shall not stop to enquire; for it does not apply in this case—it does not appear that defense at law was objected to *upon the ground* that it was of equitable cognizance, but the plea was simply demurred to, and upon what ground sustained, we are not informed.

2. Where a party has a valid legal defense, it should be made at law; if he present it at law, and his plea is rejected upon demurrer, he may not then withdraw it and resort to a court of equity.

3. That a party demurred to a plea at law, and succeeded in excluding the defense, does not estop him in all cases from objecting to the jurisdiction of the chancellor when the same matter is there presented as ground of equity.

The defense being complete and ample at law, and possessing no feature of equity in it, we think the chancellor erred in perpetuating the injunction.

Wherefore, the decree is reversed, and the cause remanded, that the bill may be dismissed.

ROBERTSON for plaintiff; B. &. J. MONROE for defendant.